Okay, Mr. Dowd. Good morning, Mr. Dyke. Good morning, Judge Dyke. Good morning, Your Honors. May it please the court, my name is Matthew Dowd. Some days I get promoted and people call me Justice. Some days I get demoted and they call me Mr. I apologize, Your Honor. My name is Matthew Dowd. I represent the appellant here, Mr. Karl Urquhart, who is an employee within the Air Liquide family of companies. Before I get to the claims, I'd like to address one issue in terms of the standard of review. And as we mentioned in our briefs, it's our position that the proper standard of review in terms of reviewing the patent office's claim construction should be de novo and not a reasonableness standard. And unless the court may have questions, but I think Judge Plager's opinion, additional views, and Judge Newman's additional views in the recent Flo Health Care case set forth a dispute in the fact that there's a clear distinction of two different lines of opinion in this court's jurisprudence. I think in terms of this case, it could make a difference. We'd ask the court to apply a de novo standard of review to the claim construction offered by the patent office. Stan, let me ask you. I apologize for kind of jumping in here on you and going to a particular area of interest that concerns me in the case. At the back of your brief, starting at page 34, you address what I'll call the Claim 13 issue. Yes, Judge. I'll just put a gray brief and a blue brief. The gray brief, your brief, because you didn't, you were, as I understand, you came on the scene with the gray brief. That's correct, yeah. You talk about, for the balance of the gray brief, the Claim 13 issue, and you make some forceful arguments in there. And the question occurs to me, to what extent are these arguments waived? Not necessarily through any, you know, oversight on your part, but because through various circumstances they weren't raised before. Specifically, relying on various items of prior art to explain what a semiconductor tool is? Yes. Semiconductor process tool is, so I mean, is there a waiver problem here with respect to arguments you're making on Claim 13? Yeah, Judge Schall, I don't believe so. Basically because there's no dispute, there's no question of the fact that that issue was raised in the blue brief and it was before the PTO, in terms of what the meaning of the term semiconductor process tool is. The patent office said that wasn't part of the claim, and they repeat that in their red brief. In terms of the particular evidence I cite, all the, for the most part, all the patents that I cite are in the record. They were cited, they were before the court, before the board, and they were before the examiner. Now there are a couple of references that I do include that were not before the examiner, but I think that gives an indication to the court of how this term is understood in this particular technology area. But the bigger problem really... Well, let me just follow up with that. On the particular point on your page 33, note 4, you say that, you argue that a reasonable interpretation would not equate a generic bathtub or trough with a special semiconductor process tool because hydrofluoric acid would dissolve in a generic tub. Yes. Was that an argument that was made below? That specific argument was not made, Judge Prost, but there's no dispute about that fact, first of all. And second of all, it just gives an indication that there's repeated mention of hydrofluoric acid in the record, there's discussion of hydrofluoric acid in the other patents and the patent application that are part of the record and that were before the examiner. Now this particular point that I make here is not in the record, but again, the point goes to the fact that the examiner, what they did is construed the term tank or semiconductor... With respect to semiconductor process tool, Claim 13, the examiner and board said that that is not part of the claim. And they said, well, a tank is, but not a semiconductor process tool. And what I'm trying to do is give the court some perspective in terms of the extreme to which the examiner and the board have construed the term tank in Claim 13 without the additional language of semiconductor process tool. But you agreed that you not, in the course of the proceedings before the board, that the bathtub was a tank, right? Judge Dike, I think what was conveyed was an agreement in arguendo, basically that even assuming that a bathtub can be a tank, the examiner was still wrong. And what's important here is in terms of when you look at the examiner's response... So then let's go back to Claim 1 for a moment. We assume for the moment that a bathtub is a tank. Yes. And you say that the blending of the two different chemical compounds is a claim limitation. The board found that it wasn't. But do you agree that if that were a claim limitation, that it would cover a situation, for example, where there was a blending of salt water and sugar syrup? In other words, it's extremely broad, is it not? The plain language of the claim, it can be read broadly, but that's only when you read it outside the context of the specification as a whole. Well, but why would we read it more narrowly in the light of the specification when it's written so broadly? Judge Dike, I don't think it's an either-or proposition, right? The point of claim construction is to read the claim term as it's understood in the context of the specification. Well, is there a definition of this term in the specification? Why is the term limiting? Why doesn't the claim cover mixing sugar water and salt water? Are you speaking specifically to the tank or the… No, I'm talking about the at least receive and blend two different chemical compounds, which you say is a claim limitation. Yes. And I'm saying what is there that would limit that? Why isn't mixing sugar water and salt water within that claim limitation on the face of it? On the face of it, there are two compounds, salt and sugar water comprise two compounds. In the context of this invention, which is talking about semiconductor processing tools, no one, no ordinary skilled person in this field would consider sugar and salt to be compounds. Where is there a reference in claim one to semiconductor processing tools? There is no specific language in claim one. It is in claim 13. But again, the claim has to be construed within the context of the four corners of this patent application. And what the examiner has done here… What language in the specification says that claim one is narrower than I suggested it was? Judge, I grant you that there is no specific language in there that says that the claim term explicitly is restricted to something. But again, it's construing the language of the terms as they're understood by a person of ordinary skill in the art which is… In the specification itself? Yes. Absolutely. If you turn to page, let's see, A-22, basically from A-20 through A-28 of the patent application, all it talks about are using chemicals in the context of processing semiconductor chips. Yeah, but you know our case law as well as anyone. If we're down the road five years and we're construing claim one, you're going to be arguing here that there's no clear disavowal with respect to the language of the spec, and claim one can be argued broadly, right? Or it may not be you, but someone has the ability to do that. And under our case law, it's not far-fetched to assume that we might very well agree with that broader construction, right? Judge, first, I'd have to disagree in this context because there is nothing in the specification that gives you any sense that this invention is directed to anything other than being used in an industrial context or setting focused on processing semiconductor chips. If that's your choice as to how to write the claim, you wrote it broadly, why aren't you coupling it? Well, let's turn to the limitation for the tank, for example, right? And what we've done is we've simply responded to the examiner's rejections based on two specific pieces of prior art. The examiner has taken the interpretation that the term tank, which he reads out in claim one, so we have to turn to claim 13 for that. So if you turn to A202 in the appendix, the examiner basically construes the term tank to be any container that can hold a liquid. And that, with respect, is not a proper interpretation of the term tank in this context. Basically, the examiner says, quote, a semiconductor material could be mixed with other materials therein. No person of ordinary skill in the art would— And this is a 202? 202, Judge Scholl. So let's turn to claim 13 now, because there at least there's the language of a semiconductor process tool, including a tank. So where have you defined—all I could find was on A19, there's a paragraph starting at line 10, where you're talking about a tank. So I assume we're talking about claim 13, the semiconductor process tool, including a tank? Yes, Judge Scholl. Okay. Well, all it says there is the tank can be part of a process tool such that the blender system provides chemical solution directly to a process that includes blah, blah, blah. The process tool can be any conventional or other suitable tool that processes a semiconductor wafer or other component. Alternatively, the blender system can provide chemical solution to one or more storage tanks, where the storage tanks can provide the chemical solution. And that seems very broad. We're talking about storage tanks here. I mean, is that what the definition is of a semiconductor process tool, including a tank? Or is there some other place in the specification to find a narrow definition? Well, Judge Perves, part of the problem with the examination in this case is that the examiner has not examined that term. The examiner hasn't— Well, okay, but I want to do that. Okay, so I'm here there, and that may not be my job, but let's assume for the sake of argument that that is our job to review that. So what can you point me to in the specification that describes to me what the inventor says is the definition of that term? In the specification, it may not be clear because it's not clear or it's not expressly laid out because it's a term that's understood by those of skill in the art. Now, in the record, we've never had— What term is that, the term tank or the term a semiconductor process tool, including a tank? Respectfully, both, Judge Perves. Now, semiconductor process tool, that was the point of citing to some of these other references that are in the record. What did you put in about someone's skill in the arts understanding of either of those terms? Pardon me, Judge Icke? What did you put in the record about a skilled person's understanding of either of those two terms? Judge Icke, we never put anything specifically because the examiner refused to address the semiconductor process term limitation of Claim 13. So we've never even had an opportunity to address that point. No opportunity to tell them what it meant? Well, when the examiner—respectfully, when the examiner comes back to you and basically says on two times that that claim term is not part of the claim, regardless of whatever you put in, the examiner is not going to change its position. Basically, the examiner read Claim 13 as not including a semiconductor process tool. Now, based on the plain language of the term, we respectfully disagree with that, and we think there's no dispute that that limitation is part of the claim, and the examiner has never addressed that point. Okay. I'm going to enter my rebuttal time. Let's just say your rebuttal time, Mr. Dabb, will give you two minutes. Mr. Icke? Good morning. May it please the Court, my name is Ben Hickman, and I represent the U.S. Patent and Trademark Office. Before I forget, could you pick up on the very final point that Mr. Dabb made, because maybe I'm missing something here, at least looking at your brief, and I haven't gone back right now to look at the board decision. It seems to me, for instance, on page 25, when you're arguing about Claim 13, I thought it was the board's position that the tank is a structural limitation on Claim 13. Am I right or wrong? That is right. The board did acknowledge that the tank is a structural limitation. What about the semiconductor process tool including the tank? What was the board's position on that? The board's position on that was that the semiconductor process tool is essentially a very broad term that describes how the invention is supposed to function. It's functional language. And that Mr. Urquhart had never put in any evidence or presented any argument. You're saying that piece. I mean, I'm looking at Claim 13. And a semiconductor process tool including a tank. So the board's view is that the tank is a structural limitation, but the words preceding it is functional? I'm just trying to understand. I'm not trying to trick you or anything. Frankly, I think the board probably had so little evidence or argument put before it that I think the board probably tried to view it from both perspectives. And the board said, okay, if this is a structural limitation first, what is the structure that Mr. Urquhart is claiming actually makes up this semiconductor process tool and actually distinguishes that from the prior art? And there was nothing in the record that the board had to go on. Number two, if you look at it from a functional perspective and the board said, okay, if Mr. Urquhart is saying that the semiconductor process tool is some sort of tool that can be used to conduct some sort of process with a semiconductor, has Mr. Urquhart met his burden to actually show that the prior art cannot do what this semiconductor process tool does? And Mr. Urquhart never made any arguments or put in any evidence to support that either. So at the end of the day, I think the board was more or less covering all of its faces, but the record was so thin and there was so little argument from Mr. Urquhart that at the end of the day it was a pretty clear affirmance of the rejection. But it's pretty clear on the face of claim 13 that the semiconductor process tool is part of what's being claimed, right? We agree that the semiconductor process tool is a part of the claim. We're certainly not trying to read it out. It is part of the claim. All we're saying is that Mr. Urquhart has never told us. It's a very broad claim. Mr. Urquhart has never told us exactly what that means. And effectively, there's nothing to distinguish that from any garden variety tank that was in the prior art. I mean, what you're saying is that there's nothing in the record indicating what attributes a tank that is part of a semiconductor process tool would have to have as distinct from the attributes of a bathtub tank. I think that is correct. That's correct. But in addition to that, we still have no idea what the semiconductor process tool itself is either. And the tank would satisfy both limitations of that claim. It was Mr. Urquhart's job to actually tell us what it meant or to provide some sort of argument to tell the agency how to make sense of that limitation, and he never did it. Stepping back a bit, I mean, you can't help in coming to this case kind of thinking either the examiner had a sense of humor about this or that the examiner was kind of lazy because there's got to be a lot of prior art out there which is better than a bathtub for this stuff. I think when we all picked up this case, we probably had the same thought. But when you look at the record that Mr. Urquhart created, I think the art that the examiner cited was entirely appropriate. These are very basic terms. They're very broad. They're essentially qualified by a lot of functional language. In his office action response and his appeal brief before the board, he didn't expand on it anymore. And so at the end of the day, what we're trying to do in the agency is to get claims as specific and clear as they are. And with claims that broad, inevitably you're going to ensnare a lot of art through a lot of other fields. And I think during Mr. Dowd's presentation, the court noted that these are very broad claims. And so I think it's not a surprise that it would be basically sweeping in art from many other different fields as basic as a bathtub. At pages 35 on to 36 of the Gray brief, Urquhart argues that there is support for the view that a semiconductor process tool would have a particular type of structure and so forth. And I guess Mr. Dowd there cites international patent application 9639651. He cites another one. He goes on to describe down at the bottom what a website suggests about it and continues in a similar vein on to the top of page 36. Now, is it your position that this material, while it might have been a good argument to make before the board, was not made? Or is it your position that even assuming it's a good argument, it doesn't carry the day? Or assuming it's a timely argument, it doesn't carry the day? I think this certainly would have been a plausible argument for the board to consider, certainly for the examiner to consider if these arguments had ever been made before the agency. But at this point, it's really water under the bridge. And this court's role is to review the record that the board had before it and the decision that the board made given what the record was at that time. So you're saying the arguments that are made here in and of themselves may well provide some support for Urquhart's position on semiconductor process tool, but they've been weighed as not having been made in the proper form, namely the examiner and the board. That's right. I think the examiner would have certainly had to consider something like this. It's hard to say at this point how the examiner or the board would have come out, whether it would have been any different. But yes, it certainly would have been a plausible argument to make, but it was never made. This was the first time that this was appearing as in the gray breeze. Well, how did the board construe this phrase, semiconductor process tool? I think what the board said was that it is any tool that in a broad sense is capable of performing some sort of process with some sort of semiconductor. And that was based on, again, the breadth of the claim that was presented to it, the lack of any contrary argument from Mr. Urquhart. I mean, it just doesn't seem intuitive that a bathtub is something that would be used in making semiconductors. Well, Mr. Urquhart, respectfully, Your Honor, what he could have argued before the agency was he could have, for instance, put in a declaration from one of ordinary school of the art discussing what sort of materials need to be used to build a semiconductor process tool, what sort of dimensions does it need to have. And that's the key evidence and argument that was never in the record. A bathtub could be made out of all kinds of different materials. And standing here today, I don't think we necessarily know whether there's a particular bathtub out there that could or could not be used with a chemical solution. Well, maybe, but that may be true. But a chemical solution to make semiconductors, I mean, just seems rather strange. Your Honor, again, I think it's easy to stand here today and to look back in hindsight and to think, well, it's our job. It is. But it's again, chemical solution. It's a very broad term. These are all things that Mr. Urquhart could have told the agency about. The reason we have the broadest reasonable interpretation rule is that the agency has to have that back and forth with the applicant. The applicant has the ability to amend the claims if there's something that, first of all, to amend the claims, but also to make those arguments in response if the agency isn't getting it right. There must be like thousands of patents on semiconductor process tools, right? No? I don't know, standing here, how many there are. I think there probably are quite a few. But again, I think given the breadth of the claims, the type of art here was appropriate for what's in the record. The board does refer, in a very brief discussion, it does refer to the agreement that this is a tank. It includes the tank. It says, thus there is agreement that Claim 13 requires a tank. And it goes on to say, in our view, the finding is reinforced by appellant's admission that a bathtub is a kind of tank. Do you think that was fair game, or was there something a little odd about sort of assuming that was an admission for purposes of applying the prior art? Well, I think the board had to take Mr. Urquhart at his word, and he said that in his office action response. And certainly if he felt that wasn't true, I assume he would have said so, but he didn't. So I think that was certainly fair for the board to note that and to take that into consideration. Chief, in response to, I think, a question, I think Judge Dyke asked if there's any construction of the term semiconductor process tool by the board. And looking at page 6 of Addendum 1 to the Blue Brief, it seems, and correct me if I'm wrong if there's anywhere else, it seems the closest that the board comes to that is where it says in the paragraph that starts regarding Claim 13, halfway down it says, the examiner correctly points out, however, that no semiconductor is required by Claim 13. What is required is a tool capable of being used to carry out a process involving a semiconductor. And is that the extent of the board's construction of what semiconductor process tool means? I just want to make sure I didn't miss something. I think that's what the board's interpretation was, and I think it came to that interpretation because it viewed that claim language largely as functional. And since it was functional, the question becomes, well, could the prior art, is it capable or incapable of performing the same function? I mean, do we need, I just want to say, how much hard factual data is needed to arrive at the proposition that a tank that works or does work on a semiconductor is going to have to have certain characteristics different from a bathtub. I mean, that's what I guess Urquhart argues. What's wrong with that argument? What's wrong with that argument is that before the agency, because this is a functional argument, it was Mr. Urquhart's burden to actually come forward with some sort of evidence or argument to show that the prior art would be incapable of performing the same function. Namely, the bathtub and the printing trough. That's right. I guess, was it Warner? Warner was a... Printing device. Right. And the reason it was Mr. Urquhart's burden is that the patent and trademark office does not have the ability to perform an experiment and to figure that out. And so it's up to the applicant to actually put that evidence in the record and to actually tell us whether it's possible or not. Again, if Mr. Urquhart had done that here, if the board and the examiner had had an opportunity to consider it, it may have been a different story, but that's not what's in the record. Before you sit down, could you address the argument Mr. Dowd, as I recall, started with, which is the appropriate standard of review and what the office's position is with regard to that matter? The office's position is that the law is that the broadest reasonable interpretation is the applicable standard. No, the standard of review that we apply when we're reviewing the board's determination. And that it is de novo review and that both standards have coexisted side by side now for many years. And here I don't think, A, it's not the case to revisit that question. Number one, because it was never raised in the Blue Brief, and so the argument is waived. Number two... Well, as I understand it, he's arguing for de novo review, so if you agree that it's de novo review, there's no dispute between the parties, at least in this context. That's also true as well. I don't see any way that this case would come out differently regardless of the standard applied. Was there any other further questions that we asked that the court affirmed? Thank you, Mr. Hickman. Thank you. Just a couple of minutes, Judge Stank. Just to respond to one argument in terms of the semiconductor process tool. I was going to say that it seems Mr. Hickman gives you a little nod of the hat. He says if the arguments and the materials and the contentions that are advanced at 35 through 36 of the Gray Brief had been made previously, we might have a different case here. I think I heard him say that. What do you say in response to that? Well, two things, Judge Schall. Of course, I wish the arguments would have been presented earlier, but they were not waived. I refer to patent applications or patents that were before the examiner, and so the examiner had this information before him. But more importantly, what Mr. Hickman has argued is that the examiner disregarded that claim language because it's functional. And so really the board's decision can be affirmed only if that language is – Functional meaning semiconductor process tool. Yes, meaning that the tank is something that could functionally add to the semiconductor process tool. The way the language is written in the claim, however, it requires a semiconductor process tool plus a tank. So they're two different things, two different structural items. It's not in addition to it. It's including. It's not a semiconductor processing tool and a tank. It says including a tank. But a tank would be something that would be part of a bigger structure that would be a semiconductor process tool. And on page 835 of my Gray Brief, I point out to a reference which was cited by the examiner, the PCT application, where it describes a semiconductor system that includes a wafer cleaning station, for example, or a deglaze station. Now, if the examiner had come back to Mr. Urquhart during prosecution and said, well, I believe a bathtub is the same as one of those tools, we might have had a different argument. But that's not what the examiner presented. The examiner told Mr. Urquhart during prosecution that that claim term is non-limiting. And that's the key distinction here, Your Honor. Semiconductor process tool is non-limiting. That's right. And that was the board's approach. That was the examiner's approach. We disagree that there's ever been any claim construction of that term that sets it forth as a limiting aspect of Claim 13. And really what the board did is when you look at their opinion in A7 and A8 is that the board concluded that because there was an admission or possibly an admission that a bathtub is a tank, that ends the question of whether Claim 13 is anticipated by the bathtub of Halder. Well, there does seem to be some – I'm sorry to carry this over here, but I just want to ask one question. There does, at page 6 of the board decision, which is Addendum 1, there does seem to be some construction that says, what is required is a tool capable of being used to carry out a process involving a semiconductor. The tool must include a tank. That seems to be a construction of semiconductor process tool. Judge Schall, if you continue, the board says thus, there is agreement that Claim 13 requires, quote, a tank. And that's where we disagree. We don't agree that Claim 13 just simply requires a tank. It requires a tank that also includes some other structure that allows it to function as a semiconductor process tool. And where is that disclosed in the spec? I mean, where do we have any kind of description of what that structure is? With respect, Judge Prost, there was no need to because it's understood. That term is understood in the art. And I think stepping back a bit, you know, when you look at the prosecution in this case, I will grant that it may not have been the best, but the point is, I think there was some frustration on both sides. When you write an application such as this, where in your mind you believe you're directing it to a semiconductor processing tool, high-tech industry, and the rejection that you're faced with is one that cites a 1925 bathtub patent, it becomes a little frustrating in terms of going to the prosecution. The point is that the examiner has never presented or disputed what the scope of semiconductor process tool is. If there was some dispute as to what that meant, we would have been able to argue and explain why a bathtub, a ceramic bathtub, is not considered a semiconductor process tool by those of ordinary skill in the art. Thank you, Mr. Dabb. The case is submitted. Thank both counsel. And that concludes our session for today.